IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

PAO LO,

    Petitioner,                      2: 05 - cv - 1754 - MCE TJB

    vs.

A.P. KANE,

    Respondent.               ORDER SETTING EVIDENTIARY HEARING

                                            AND ORAL ARGUMENT

_____/

## I. INTRODUCTION

Petitioner is a state prisoner proceeding with an application for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner is currently serving a sentence of twenty-eight years to life imprisonment after being convicted by a jury of four counts of assault with a semiautomatic firearm, one count of shooting at an occupied motor vehicle, one count discharging a firearm from a vehicle and enhancements for infliction of great bodily injury and personal intentional use of a firearm. Petitioner raises several claims in his federal habeas petition. Most relevant to this order are Claims VII and VIII. In Claim VII, Petitioner argues that the prosecutor violated Batson v. Kentucky, 476 U.S. 79 (1986) when he systematically struck four potential jurors before Petitioner's trial on the basis of their Asian race. In Claim VIII, Petitioner argues that

appellate counsel was ineffective for failing to raise this <u>Batson</u> claim on direct appeal.  For the following reasons, an evidentiary hearing will be ordered to resolve these claims.[1]

## II.  BACKGROUND

In Claim VII, Petitioner argues that the prosecutor improperly dismissed four potential jurors because of their Asian race; specifically, Petitioner argues that the prosecutor's peremptory strikes against Charlie Foo, Patricia Lee, Violeta Egholm and Anita Deruosi were improper under the Constitution.  In Claim VIII, Petitioner argues that appellate counsel should have raised his <u>Batson</u> claim on direct appeal.

### A.  State Court Proceedings

During the voir dire proceedings, defense counsel (Mr. Jeffrey Silvia) argued that the prosecutor was impermissibly striking jurors based on their Asian race.  Petitioner is Asian.  The following colloquy took place during the voir dire proceedings after Petitioner's defense counsel asserted that the peremptory strikes were improper:

> MR. SILVIA:  It's been my observation that the prosecutor has systematically exercised challenges with respect to the potential jurors that appear to be of Asian descent and also other minorities.  [¶]  For instance, he's exercised a challenge with respect to an individual by the name of Charlie Foo.  There was another potential juror by the name of Violeta Egholm, that those two, according to my observations, were Asian.  [¶]  There was a Miss Lee that was most recently challenged, was exercised against, who also appeared to me to be of Asian descent . . . . And so I think this systematic exclusion of Asians, particularly, and minorities in general is in violation of the law addressed in the Wheeler case.
> THE COURT:  I do find a prima facie case.  Mr. Rasmussen, what is your response as far as the reason for excusing those jurors.
> MR. RASMUSSEN:  Well, I think they need to be addressed separately.  First, the Asians.  I believe one of the people was Mr. Foo, who worked in human resources for San Joaquin County.  I noticed – and I even told Mr. Silvia yesterday, that he smiled at his client during the break and I saw the defendant in this case, Pao Lo, smile back at Mr. Foo.  And, for that reason, and I thought that he

---

[1] Petitioner raises several additional claims in his federal habeas petition.  The court finds that an evidentiary hearing on these other claims is not warranted at this time.  Those claims are taken under advisement.

> was young and lacked life experiences. [¶] I know Miss Lee – I'm not doing these in order – Miss Lee, I excused her. I thought her personality was very strong and I thought that that was a reason, that I did not feel that she should be on this jury . . . .
> Egholm. She was one – as you can see, and I'll even reveal my notes if I can find them here. I could not get her to respond to any of the questions. All I knew about her was that she was from Manteca, assistant manager, her husband worked at the Depot and she has kids. And I never got her to respond to another question and I did not feel that I knew her enough . . . .
> MR. SILVIA: Actually, one other potential juror whose name is Deruosi that I believe also falls into that category.
> MR. RASMUSSEN: Italian?
> THE COURT: I don't know that.
> MR. SILVIA: She – maybe that's a married name. She appeared to be Asian.
> THE COURT: I don't know what her racial background is. Do you recall that juror, Mr. Rasmussen?
> MR. RASMUSSEN: Yes, I do. Anita Deruosi. She was a housewife. Her husband was into farming. She – she answered questions. She was not happy with racing and I thought that she may hold it against anyone that was involved with racing. I thought she was a follower and I don't think she understood questions. [¶] In fact, when I asked her at one time, she said, "I don't understand the question." When I asked her again, her response was, "I don't want to answer."
> THE COURT: Any response, Mr. Silvia?
> MR. SILVIA: None other than to say that I think that the reasons given are insufficient.
> THE COURT: Having heard the reasons by Mr. Rasmussen, I don't find that there was an exclusion because of race or national background. I think that they were all legitimate challenges and – on each one of them, so I am going to deny the motion.

(Resp't's Lodged Doc. 10 at p. 194-97.)

Petitioner has declared that no Asian-Americans were on his jury.[2] (See Pet'r's Pet. at p. 16.) After ultimately being convicted by a jury and sentenced, Petitioner appealed to the California Court of Appeal. On appeal, Petitioner had new counsel, Ms. Katherine Hart. According to a declaration Petitioner filed during the course of one of his state habeas petitions, Petitioner asserts that he wrote Ms. Hart a letter expressing his thoughts on potential appeal

---

[2] The habeas petition which Petitioner signed was made under penalty of perjury in compliance with 28 U.S.C. § 1746 and Rule 2(c)(5) of the Rules Governing § 2254 Cases in the United States District Courts. Thus, the petition has the force of an affidavit or sworn declaration. See Hall v. Furlong, 77 F.3d 361, 362 n.2 (10th Cir. 1996).

3

1 issues. In that letter, Petitioner stated that he "told Ms. Hart that the prosecutor had excluded all
2 Asians from [his] jury." (See Resp't's Lodged Doc. 16 at Ex. A p. 2.)

3      On direct appeal, Petitioner raised two issues to the California Court of Appeal;
4 specifically: (1) the prosecutor committed misconduct "in questioning a witness, Mercy Heu,
5 concerning a phone call allegedly made to the witness by someone acting on [Petitioner's] behalf
6 (Resp't's Lodged Doc. 1 at p. 25.); and (2) there was insufficient evidence to support the
7 convictions. (See id. at p. 34.) On August 18, 2003, the California Court of Appeal rejected both
8 of these claims. In Petitioner's petition for review to the California Supreme Court, Petitioner
9 only raised the issue of prosecutorial misconduct. On October 29, 2003, the California Supreme
10 Court summarily denied the petition for review.

11      In January 2004, Petitioner then filed an application in the County of San Joaquin
12 Superior Court for an order directing that a transcript be made of the voir dire proceedings. (See
13 Resp't's Lodged Doc. 15 at Ex. A.) The Superior Court denied the application on January 26,
14 2004 without explanation.

15      Petitioner then filed a state habeas petition in the County of San Joaquin Superior Court
16 on February 24, 2004. Among the claims that Petitioner raised in that state habeas petition was a
17 Batson claim as well as a claim that Ms. Hart was ineffective for failing to raise the Batson claim
18 on direct appeal. (See Resp't's Lodged Doc. 15.) In this state habeas petition, Petitioner once
19 again requested that a transcript of the voir dire proceedings be made as it was "necessary for a
20 full and fair adjudication of [the Batson] claim." (Resp't's Lodged Doc. 15 at p. 37.) Petitioner
21 also requested an evidentiary hearing. (See id. at p. 39 "Petitioner is aware that he is required to
22 provide copies of reasonably available documentary evidence, including pertinent portions of the
23 voir dire proceedings, to support this claim. However, petitioner's diligent effort to gain access
24 to that record was summarily rejected by the court. Accordingly, petitioner cannot be held
25 responsible nor be penalized for this failure. Taken as true, the facts in support of this Ground
26 meet the basic requirement for issuance of an Order to Show Cause. Petitioner respectfully

1  submits that this Court must issue such an order, and prays that upon its issuance petitioner be
2  provided with a copy of the transcript of the voir dire proceedings held on March 6 and 7, 2002,
3  and allowed an evidentiary hearing as required for a full and fair adjudication of this issue.").)
4  On March 18, 2004, the San Joaquin Superior Court denied Petitioner's state habeas petition in a
5  written opinion.  With respect to Petitioner's Batson claim, the Superior Court stated the
6  following:

> According to Petitioner, the prosecution used its peremptory challenges for the purpose of systematically excluding all Asian jurors – to Petitioner's prejudice.  Petitioner is Asian.  Petitioner asserts that defense counsel objected to the prosecution's tactic and a hearing was held.  Ultimately, the trial court overruled the objection.  [¶]  Petitioner concedes that he advised his appellate counsel to raise this issue on appeal, but appellate counsel did not.  Habeas corpus relief is not a substitute for appeal.  In re Dixon (1953) 41 C[al].2d 756, 762.

12  (Resp't's Lodged Doc. 16 at p. 2.)  With respect to Petitioner's claim that appellate counsel was
13  ineffective for failing to raise the Batson claim on direct appeal, the Superior Court stated that,
14  "[w]ith regard to the voir dire, Petitioner offers essentially nothing to suggest what was suspect
15  in the prosecutor's explanation of his use of peremptory challenges.  Petitioner merely concludes
16  that 'all of the prosecutor's reasons were . . . suspect.'  Vague or conclusionary allegations do not
17  warrant habeas relief.  People v. Duvall (1995) 9 C[al].4th 464, 474."  (Resp't's Lodged Doc. 16
18  at p. 2.)
19     Petitioner raised these two claims (amongst others) to the California Court of Appeal in a
20  state habeas petition field on April 1, 2004.  (See Resp't's Lodged Doc. 13.)  Once again,
21  Petitioner requested that a transcript of the voir dire transcript be made so that a full and fair
22  adjudication of the Batson claim could be made.  (See id. at p. 37.)  Petitioner also requested an
23  evidentiary hearing.  (See id. at p. 39.)  The California Court of Appeal summarily denied the
24  petition on April 29, 2004.  (See Resp't's Lodged Doc. 14.)
25     Petitioner then filed a habeas petition in the California Supreme Court in May 2004 (See
26  Resp't's Lodged Doc. 6.)  Among the claims raised in that petition were the Batson claim and the

5

ineffective assistance of appellate counsel claim for failing to raise the Batson issue on direct appeal. Petitioner requested that a transcript of the voir dire proceedings be made. (See id. at p. 37.) Petitioner again requested an evidentiary hearing. (See id. at p. 39.) The California Supreme Court summarily denied this habeas petition on April 13, 2005.[3] (See Resp't's Lodged Doc. 7.)

B. Federal Court Proceedings

Petitioner filed the instant federal habeas petition *pro se* on September 1, 2005. On October 13, 2005, Magistrate Judge Hollows appointed the Federal Defender to represent Petitioner. On October 27, 2005, the matter was reassigned from Magistrate Judge Hollows to Magistrate Judge Moulds. On November 16, 2005, Mr. Walter K. Pyle was substituted as counsel for Petitioner.

Respondent answered the federal habeas petition on May 17, 2006. In the answer, Respondent admitted that Petitioner had exhausted his state remedies on the claims raised in the federal habeas petition. (See Resp't's Answer at p. 2 ("Respondent admits Petitioner has exhausted his state remedies on the claims raised in this petition.").) With respect to Claims VII and VIII, Respondent asserted that, "[b]ecause no transcript of the jury selection proceedings exists, Petitioner has not established the constitutional violation he alleges. Therefore, his claims seven and eight must fail." (Id. at p. 40.) Petitioner filed his traverse on June 30, 2006.

On January 20, 2010, Magistrate Judge Moulds ordered that the Respondent provide Petitioner with a complete transcript of the jury voir dire proceedings from Petitioner's criminal trial. In ordering the Respondent to provide a copy of the voir dire transcript, Magistrate Judge Moulds quoted Boyd v. Newland, 467 F.3d 1139 (9th Cir. 2006) and stated that, "'[a]ll

---

[3] Because the California Supreme Court and the California Court of Appeal denied Petitioner's habeas petition without comment, a federal habeas court "looks through" the unexplained decision to the "'last reasoned decision . . . as the basis for the state court's judgment.'" See Bailey v. Rae, 339 F.3d 1107, 1112 (9th Cir. 2003) (quoting Shackleford v. Hubbard, 234 F.3d 1072, 1079 n.2 (9th Cir. 2000). In this case, the last reasoned decision on these two claims was from the San Joaquin Superior Court.

defendants, including those who are indigent, have a right to have access to the tools which would enable them to develop their plausible Batson claims through comparative juror analysis.' Boyd, 467 F.3d at 1150. A state court's refusal to provide a habeas petition with the whole voir dire transcript, in the face of a plausible Batson claim, involves an unreasonable application of clearly established Supreme Court precedent. Id." (See Dkt. No. 24 at p. 3.) Magistrate Judge Moulds continued by stating that, "[a] complete voir dire transcript is indispensable to this court's review of petitioner's Batson claim, and where, as here, petitioner is indigent, the state must provide that transcript." (See id. at p. 4.) On February 9, 2010, the matter was reassigned from Magistrate Judge Moulds to Magistrate Judge Newman. On March 15, 2010, Respondent complied with Magistrate Judge Moulds' January 20, 2010 order and filed a transcript of the jury voir dire proceedings.

On August 23, 2010, Magistrate Judge Newman ordered the parties to file supplemental briefing on the Batson issue in light of the recently filed transcript of the jury voir dire proceedings. The parties filed supplemental briefs addressing the Batson issue on October 20, 2010. In Respondent's brief, he argued for the first time that Petitioner's Batson claim was unexhausted and procedurally barred. Alternatively, Respondent argued that Petitioner was not entitled to federal habeas relief on his Batson claim on the merits. On November 22, 2010, the matter was reassigned to the undersigned by Chief Judge Ishii.

Petitioner filed a response to Respondent's supplemental Batson brief on December 14, 2010. In that response, Petitioner asserted that the court should strike Respondent's procedural bar/exhaustion arguments because they constituted new affirmative matters that were not raised in Respondent's answer. Petitioner also argued that ineffective assistance of appellate counsel for failing to raise the Batson issue on direct appeal constituted the requisite cause and prejudice to overcome the purported procedural default. Respondent filed a reply to Petitioner's response on January 4, 2011.

//

III. LEGAL STANDARDS FOR INEFFECTIVE ASSISTANCE OF COUNSEL AND BATSON

A. Ineffective Assistance of Counsel Standard

The Sixth Amendment guarantees effective assistance of counsel. In Strickland v. Washington, 466 U.S. 668, 1984), the Supreme Court articulated the test for demonstrating ineffective assistance of counsel. First, the petitioner must show that considering all the circumstances, counsel's performance fell below an objective standard of reasonableness. See id. at 688. Petitioner must identify the acts or omissions that are alleged not to have been the result of reasonable professional judgment. See id. at 690. The federal court must then determine whether in light of all the circumstances, the identified acts or omissions were outside the range of professional competent assistance. See id.

Second, a petitioner must affirmatively prove prejudice. See id. at 693. Prejudice is found where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. A reasonable probability is "a probability sufficient to undermine the confidence in the outcome." Id. A reviewing court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by defendant as a result of the alleged deficiencies . . . [i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed." Pizzuto v. Arave, 280 F.3d 949, 955 (9th Cir. 2002) (citing Strickland, 466 U.S. at 597). A claim of ineffective assistance of appellate counsel utilizes the same Strickland standard that is applied to trial counsel. See Smith v. Robbins, 528 U.S. 259, 287 (2000).

B. Batson Standard

To establish a Batson claim, the defendant must first make a prima facie showing that a challenge was made on an impermissible basis, such as race. See 476 U.S. at 96; see also Johnson v. California, 545 U.S. 162, 170-71 (2005). To establish a prima facie case, a petitioner must show that (1) the prospective juror is a member of a cognizable racial group, (2) the

prosecutor used a peremptory strike to remove the juror, and (3) the totality of the circumstances raises an inference that the strike was motivated by race. See Boyd, 467 F.3d at 1143 (citing Batson, 476 U.S. at 96). "[A] defendant satisfies the requirements of Batson's first step by producing evidence sufficient to permit the trial judge to draw an inference that discrimination has occurred." Johnson, 545 U.S. at 170.

Where the defendant has made a prima facie showing of discrimination, the burden shifts to the prosecutor to offer a race-neutral reason for the challenge that relates to the case. See id. at 168. Where a prosecutor offers a race-neutral explanation for the challenge, the trial court decides whether the defendant has proved the prosecutor's motive for the challenge was purposeful racial discrimination. See id.; Batson, 476 U.S. at 98. The opponent of the strike has the ultimate burden of persuasion regarding racial motivation. See Purkett v. Elem, 514 U.S. 765, 768 (1995) (per curiam). An en banc panel of the Ninth Circuit in Kesser v. Cambra, 465 F.3d 351, 359-60 (9th Cir. 2006) (en banc) discussed at length the requirements of a court in analyzing the third step of a Batson claim:

> At this stage, "the trial court determines whether the opponent of the strike has carried his burden of proving purposeful discrimination." Purkett, 514 U.S. at 768. Although the burden remains with the defendant to show purposeful discrimination, the third step of Batson primarily involves the trier of fact. After the prosecution puts forward a race-neutral reason, the court is required to evaluate "the persuasiveness of the justification." Id. To accept a prosecutor's stated nonracial reasons, the court need not agree with them. The question is not whether the stated reason represents a sound strategic judgment, but "whether counsel's race-neutral explanation for a peremptory challenge should be believed." Hernandez v. New York, 500 U.S. 352, 365 (1991) (plurality opinion). "It is true that peremptories are often the subjects of instinct," and that "it can sometimes be hard to say what the reason is." Miller-El, 125 S.Ct. at 2332. "But when illegitimate grounds like race are in issue, a prosecutor simply has got to state his reasons as best he can and stand or fall on the plausibility of the reasons he gives." Id. "While subjective factors may play a legitimate role in the exercise of challenges, reliance on such factors alone cannot overcome strong objective indicia of discrimination. . . ." Burks v. Borg, 27 F.3d 1424, 1429 (9th Cir. 1994).

> The trier of fact may not turn a blind eye to purposeful discrimination obscured by race-neutral excuses. "[T]he prosecutor must give a 'clear and reasonably specific' explanation of his 'legitimate reasons' for exercising the challenges." Batson, 476 U.S. at 98 n. 20 (quoting Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 258 (1981)). "A Batson challenge does not call for a mere exercise in thinking up any rational basis." Miller-El, 125 S.Ct. at 2332. Reasons must be "related to the particular case to be tried." Batson, 476 U.S. at 98. "[I]mplausible or fantastic justifications may (and probably will) be found to be pretexts for purposeful discrimination." Purkett, 514 U.S at 768.
>
> The court need not accept any proffered rationale. We have recognized that "[w]hen there is reason to believe that there is a racial motivation for the challenge, neither the trial courts nor we are bound to accept at face value a list of neutral reasons that are either unsupported in the record or refuted by it." Johnson, 3 F.3d at 1331. The court must evaluate the record and consider each explanation within the context of the trial as a whole because "'[a]n invidious discriminatory purpose may often be inferred from the totality of the relevant facts.'" Hernandez, 500 U.S at 363, 111 S.Ct. 1859 (quoting Washington v. Davis, 426 U.S. 229, 242 (1976)); see also Miller-El, 125 S.Ct. At 2324 (noting that Batson requires inquiry into "'the totality of the relevant facts' about a prosecutor's conduct" (quoting Batson, 476 U.S. at 94, 106 S.Ct. 1712)); Batson, 476 U.S. at 93, 106 S.Ct. 1712 ("In deciding if the defendant has carried his burden of persuasion, a court must undertake a sensitive inquiry into such circumstantial and direct evidence as may be available." (internal quotation marks omitted)). A court need not find all nonracial reasons pretextual in order to find racial discrimination. "[I]f a review of the record undermines the prosecutor's stated reasons, or many of the proffered reasons, the reasons may be deemed a pretext for racial discrimination." Lewis v. Lewis, 321 F.3d 824, 830 (9th Cir. 2003); see also United States v. Chinchilla, 874 F.2d 695, 699 (9th Cir. 1989) ("Thus, the court is left with only two acceptable bases for the challenges. . . . Although these criteria would normally be adequately 'neutral' explanations taken at face value, the fact that two of the four proffered reasons do not hold up under judicial scrutiny militates against their sufficiency.").

See also Green v. LaMarque, 532 F.3d 1028, 1030 (9th Cir. 2008) (discussing the court's inquiry at the third step of a Batson analysis). "'If a prosecutor's proffered reason for striking a [minority] panelist applies just as well to an otherwise - similar [nonminority] who is permitted to serve, that is evidence tending to prove purposeful discrimination to be considered at Batson's third step.'" Kesser, 465 F.3d at 360 (quoting Miller-El v. Dretke, 545 U.S. 231, 241 (2005)).

"'[T]he Constitution forbids striking even a single prospective juror for a discriminatory purpose.'" United States v. Collins, 551 F.3d 914, 919 (9th Cir. 2009) (quoting United States v. Vasquez-Lopez, 22 F.3d 900, 902 (9th Cir. 1994))

IV.  STANDARD TO CONDUCT AN EVIDENTIARY HEARING AND ANALYSIS

Before the enactment of AEDPA, the decision of whether to hold an evidentiary hearing was firmly committed to the discretion of the district courts, subject to some judicially created limitations on that discretion.  See, e.g., Townsend v. Sain, 372 U.S. 293 (1963), as modified by, Keeney v. Tamayo-Reyes, 504 U.S. 1 (1992).  However, the amendments in AEDPA imposed "an express limitation on the power of a federal court to grant an evidentiary hearing," see Cardwell v. Greene, 152 F.3d 311, 336 (4th Cir. 1998), overruled on other grounds by, Bell v. Jarvis, 236 F.3d 149 (4th Cir. 2000), and have reduced considerably the degree of the district court's discretion in conducting an evidentiary hearing in a federal habeas proceeding. AEDPA provides in pertinent part that:

> (e)(1) In a proceeding instituted by an applicant for a writ of habeas corpus by a person in custody pursuant to a judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.
> (2) If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that . . . the claim relies on . . . a factual predicate that could not have been previously discovered through the exercise of due diligence and . . . the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2254(e).  Thus, under AEDPA, a district court must determine whether a factual basis exists in the record to support the petitioner's claims.  If the facts do not exist or are inadequate and an evidentiary hearing might be appropriate then the:

> court's first task in determining whether to grant an evidentiary hearing is to ascertain whether the petitioner has "failed to develop the factual basis of a claim in State court."  If so, the court must

11

> deny a hearing unless the applicant establishes one of the two narrow exceptions set forth in § 2254(e)(2)(A) & (B). If, on the other hand, the applicant has not "failed to develop" the facts in state court, the district court may proceed to consider whether a hearing is appropriate, or required under Townsend.

See Baja v. Ducharme, 187 F.3d 1075, 1078 (9th Cir. 1999) (quoting Cardwell, 152 F.3d at 337). A prisoner "fails" to develop the factual basis of a claim, triggering § 2254(e))(2), if "there is a lack of diligence, or some greater fault, attributable to the prisoner or prisoner's counsel." Williams v. Taylor, 529 U.S. 420, 432 (2000). "Diligence will require in the usual case that the prisoner, at a minimum, seek an evidentiary hearing in state court in the manner prescribed by state law." Id. at 437. However, "where an applicant has diligently sought to develop the factual basis of a claim for habeas relief, but has been denied the opportunity to do so by the state court, § 2254(e)(2) will not preclude an evidentiary hearing in federal court." Baja, 187 F.3d at 1078-79 (citations omitted). Thus, it is important to consider whether Petitioner's claims were curtailed at the state level.

     As previously noted, Petitioner filed an application to have a transcript of the voir dire transcript in the San Joaquin Superior Court. He made this same request at each level of the California state courts in his state habeas petitions. He also requested an evidentiary hearing at each level of the California courts reviewing his state habeas petitions.

     As the Ninth Circuit stated in Boyd and Judge Moulds stated in this case, the voir dire transcript is a necessary component of Petitioner's Batson claim. It is also a necessary component of Claim VIII. As previously noted, a petitioner must show that he was prejudiced in order to raise a successful ineffective assistance of counsel claim. He must show to a reasonable probability that the outcome of the proceeding would have been different had counsel not been ineffective. Therefore, the underlying Batson claim also implicates Petitioner's ineffective assistance of appellate counsel claim for failing to raise the Batson claim on direct appeal.

     The reasoning of San Joaquin Superior Court's decision denying Petitioner's state habeas petition illustrated the requisite need of the voir dire transcript. The Superior Court determined

that Petitioner's ineffective assistance of appellate counsel for failing to raise the Batson claim was vague and did not suggest what was suspect in the prosecutor's explanation of the use of the peremptory challenges. In light of the fact that the state courts denied Petitioner's requests to obtain the voir dire transcript and his requests for an evidentiary hearing, Petitioner could only make "vague" allegations based on what he remembered transpired during voir dire.

Petitioner's failure to develop the factual basis of Claims VII and VIII during the state court proceedings was the result of a curtailed proceeding before the state courts. Petitioner requested the voir dire transcript and an evidentiary hearing but both of these requests were denied. Therefore, § 2254(e)(2) is not applicable under these unique circumstances. See Cooper-Smith v. Palmateer, 397 F.3d 1236, 1241 (9th Cir. 2005) ("An exception to the to this general rule exists if a petitioner exercised diligence in his efforts to develop the factual basis of his claims in state court proceedings."); see also Williams, 529 U.S. at 437 ("comity is not served by saying a prisoner 'has failed to develop the factual basis of a claim' where he was unable to develop his claim in state court despite diligent effort. In that circumstance, an evidentiary hearing is not barred by § 2254(e)(2)").

Because the Petitioner has not failed to develop the factual basis his claim in state court, the issue becomes whether a hearing is appropriate or required under the criteria set forth in Townsend, 372 U.S. 293. In Townsend, 372 U.S. at 313, the Supreme Court held that:

> a federal court must grant an evidentiary hearing to a habeas applicant under the following circumstances: If (1) the merits of the factual dispute were not resolved in the state hearing; (2) the state factual determination is not fairly supported by the record as a whole; (3) the fact-finding procedure employed by the state court was not adequate to afford a full and fair hearing; (4) there is a substantial allegation of newly discovered evidence; (5) the material facts were not adequately developed at the state-court hearing; or (6) for any reason it appears that the state trier of fact did not afford the habeas applicant a full and fair hearing.

The Ninth Circuit has also explained that where a petitioner has met "the not failed' requirement, the petitioner must proceed to satisfy Townsend. However, in such instances, meeting the

1  second part of the test will ordinarily be only a formality." Insyxiengmay v. Morgan, 403 F.3d
2  657, 670 n.6 (9th Cir. 2005).  In this case, Petitioner has satisfied the requisite criteria under
3  Townsend to warrant an evidentiary hearing on his ineffective assistance of appellate counsel
4  claim for failing to bring the Batson claim on direct appeal.  For example, the material facts were
5  not adequately developed at the state-court proceedings on Claims VII and VIII of his federal
6  habeas petition.  Thus, Townsend has been satisfied.  While the voir dire transcript is now part of
7  the record, additional evidence will be received on Claims VII and VII as explained in infra Part
8  V to the extent such evidence exists to assist the court in resolving these claims.

V. INSTRUCTIONS TO THE PARTIES TO PREPARE FOR THE EVIDENTIARY HEARING

For the foregoing reasons, an evidentiary hearing is warranted on Claims VII and VIII of Petitioner's federal habeas petition.  The court notes that Petitioner states that he told appellate counsel about the prosecutor's exclusion of Asians from the jury in a letter.  Petitioner declares that appellate counsel did not respond to that letter nor did she request a copy of the voir dire transcript or raise a Batson claim on direct appeal.  Besides Petitioner's statement, there is nothing else in the record to confirm or deny that this is factually accurate.  In light of Respondent's argument that Petitioner's Batson claim is procedurally barred, and Petitioner's response that any procedural bar has been overcome by the showing of cause and prejudice due to appellate counsel's ineffective assistance of counsel for failing to raise the Batson claim on direct appeal, the court will first receive evidence on Claim VIII at the evidentiary hearing.  At the evidentiary hearing, the parties should be prepared to present evidence (which evidence could include testimony and/or documentary evidence from Ms. Hart) regarding Claim VIII of Petitioner's federal habeas petition.

Petitioner does not only raise Claim VIII as a claim to constitute cause and prejudice to overcome Respondent's procedural bar argument with respect to Claim VII.  As exemplified by the Superior Court's decision on March 18, 2004 and Petitioner's own federal habeas petition, he

raised Claim VIII as its own stand alone habeas claim. As previously stated, Petitioner needs to show that he was prejudiced by appellate counsel's failure to bring the Batson claim on direct appeal. Therefore, the court must also consider the underlying Batson claim to determine whether there is a reasonable probability that the outcome of the proceeding would have been different had appellate counsel raised the Batson claim on direct appeal. Thus, the parties may present additional evidence on the underlying Batson issue as well. The evidence to be submitted can be, but is not limited to juror questionnaires, the overall racial make-up of the jury pool and/or the racial makeup of the empaneled jury should such evidence exist.[4]

The court will also receive evidence regarding the race of Ms. Derousi if available. At the voir dire proceedings, the trial judge affirmatively determined that Petitioner has satisfied his prima facie case regarding the prosecutor's use of peremptory strikes against Mr. Foo, Ms. Lee and Ms. Egholm. (See Resp't's Lodged Doc. 10 at p. 194.) By making this finding, the trial judge therefore specifically found that these three jurors were members of an identifiable racial group. See Boyd, 467 F.3d at 1143. However, it is not necessarily apparent in the record that Ms. Deruosi was in fact Asian as the trial judge did not necessarily make the same prima facie finding with respect to the strike against Ms. Deruosi.

Upon completion of the evidentiary hearing, the court will entertain oral argument the on Batson issue.[5] So that the parties can focus their arguments, the court is particularly interested in accepting argument on the prosecutor's peremptory strike against Ms. Egholm. In Respondent's supplemental Batson brief, he stated that "there could have been additional demeanor-based

---

[4] The court notes that Petitioner has declared that there were no Asians on the jury. (See Pet'r's Pet. at p. 16.)

[5] The court is aware that Respondent argues that the Batson claim is unexhausted and procedurally barred. The court will entertain argument on these issues as well at the hearing. However, Respondent does not argue that Claim VIII is procedurally barred or unexhausted. The merits of the underlying Batson claim are implicated under the prejudice prong of that ineffective assistance of appellate counsel claim. The parties should be prepared to argue whether the exhaustion/procedural bar arguments were waived by Respondent's failure to raise them in the answer as well as be prepared to argue these issues on the merits.

reasons, not apparent from the face of the record, why the prosecutor chose to retain Juror No. 11 that may have distinguished Juror No. 11 from Ms. Egholm." (Resp't's Supp. Batson Brief at p. 20.) However, this argument appears to misapply the third-step of the Batson inquiry as the Supreme Court has stated that, "a prosecutor simply has got to state his reasons as best he can and stand or fall on the plausibility of the reasons he gives. A Batson challenge does not call for a mere exercise in thinking up any rational basis." Miller-El, 545 U.S. at 252. As previously stated, the prosecutor gave his reasons for striking the four potential jurors at issue at the trial court. Additional possible theoretical reasons why the prosecutor struck these potential four jurors should not most likely be considered in this federal habeas proceeding.

In accordance with the foregoing, IT IS HEREBY ORDERED that:

1. This matter is set for an evidentiary hearing and oral argument on March 16, 2011, at 9:00 a.m. before the undersigned in Courtroom # 26 at the United States Courthouse located at 501 I Street, Sacramento, California 95814, subject to the ability to have Petitioner present in accordance with the separate order and writ of habeas corpus ad testificandum.

2. All parties shall appear at the evidentiary hearing by counsel.

3. At least fourteen (14) days before the hearing, the parties shall jointly inform the court whether any party wishes to conduct live testimony at the hearing and provide the court with a list of those witnesses. The parties shall also jointly provide the court with an approximation for the length of time the parties will need for the evidentiary hearing at least fourteen (14) days before the hearing date. Unless otherwise allowed, it is contemplated that each party shall need no more than two (2) hours to present evidence and no more than one (1) hour for oral argument.

//
//

DATED: February 15, 2011

TIMOTHY J BOMMER
UNITED STATES MAGISTRATE JUDGE